UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| KEVIN BRYANT, | ) |
| Plaintiff, | ) Case No. EDCV 13-00857 AJW |
| v. | ) MEMORANDUM OF DECISION |
| CAROLYN W. COLVIN,<br>Commissioner of the Social<br>Security Administration, | ) |
| Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the joint stipulation. [JS 2]. In a November 8, 2011 written hearing decision that constitutes the Commissioner's final decision in this case, an administrative law judge (the "ALJ") found that plaintiff had no exertional limitations, but that he had nonexertional limitations limiting him to simple and repetitive tasks in a nonpublic environment requiring no intense interpersonal contact with others; no fast-paced work, such as moving assembly lines; no reading, writing, or mathematics above the second-grade level; and no work at unprotected heights or

around dangerous machinery. [JS 2; Administrative Record ("AR") 14, 70]. Based on the testimony of a vocational expert ("VE"), the ALJ found that plaintiff's RFC did not preclude him from performing alternative jobs that exist in significant numbers in the national economy, namely the Dictionary of Occupational Titles ("DOT") jobs of hand packager, DOT occupational classification number 920.587-018; packaging machine operator, DOT occupational classification number 920.685-078; and warehouse worker, DOT occupational classification number 922.687-058. Accordingly, the ALJ concluded that plaintiff was not disabled through the date of his decision. [AR 19-25].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

The only disputed issue is whether a conflict exists between the DOT's description of the jobs of hand packager, packaging machine operator, and warehouse worker, and the VE's testimony, which the ALJ adopted, that a person with plaintiff's RFC can perform those alternative jobs. [JS 3-13].

At step five, the Commissioner has the burden of establishing, through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines, that the claimant can perform alternative jobs that exist in substantial numbers in the national economy. Bruton v. Massanari, 268 F.3d 824, 827 n.1 (9th Cir. 2001). "Where the testimony of a VE is used at Step Five, the VE must identify a specific job or jobs

1  in the national economy having requirements that the claimant's physical and mental abilities and vocational
2  qualifications would satisfy." <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162-1163 (9th Cir. 2001).

3  Under Ninth Circuit law and Social Security Ruling ("SSR") 00-4p[1], an ALJ may not rely on a VE's
4  testimony regarding the requirements of a particular job without first inquiring whether that testimony
5  conflicts with the DOT. <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1152 (9th Cir. 2007); <u>see</u> <u>Johnson v. Shalala</u>,
6  60 F.3d 1428, 1435 (9th Cir. 1995) (noting that a rebuttable presumption exists that the job classification
7  information in the DOT controls) (citing <u>Villa v. Heckler</u>, 797 F.2d 794, 798 (9th Cir. 1986)).  A VE's
8  "testimony may give rise to such a conflict in at least two different ways. First, the [VE] may testify that
9  a particular job requires a particular exertional or skill level, when the DOT expressly provides that the job
10 requires a different exertional level." <u>Carey v. Apfel</u>, 230 F.3d 131, 144 n.2 (5th Cir. 2000). "A second, and
11 different type of conflict may arise when the [VE's] testimony places the ALJ's finding with respect to the
12 claimant's residual functional capacity or the claimant's specific impairments in conflict with the exertional
13 or skill level or the specific skills required for the identified jobs in the DOT." <u>Carey</u>, 230 F.3d at 144 n.2.

14 Neither the DOT nor the VE's testimony "automatically trumps when there is a conflict." <u>Massachi</u>,
15 486 F.3d at 1153 (footnote omitted). If an apparent conflict exists, the ALJ must obtain an explanation for
16 it, determine whether the VE's explanation is reasonable, decide whether a basis exists for relying on the
17 VE rather than on the DOT, and explain how he or she resolved the conflict. <u>Massachi</u>, 486 F.3d at 1152-
18 1153; <u>see</u> SSR 00-4p, 2000 WL 1898704, at *2-*4.  This procedural requirement "ensure[s] that the record
19 is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's
20 testimony conflicts with the [DOT]." <u>Massachi</u>, 486 F.3d at 1153.

---

[1] Social security rulings "are binding on all components of the Social Security Administration [SSA]" and represent

> final opinions and orders and statements of policy and interpretations of the SSA. SSRs reflect the official interpretation of the SSA and are entitled to some deference as long as they are consistent with the Social Security Act and regulations. SSRs do not carry the force of law, but they are binding on ALJs nonetheless.

<u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1224 (9th Cir. 2009) (internal quotation marks, citations, alteration, and footnote omitted).

1  Plaintiff contends that his nonexertional limitations prohibiting fast-paced work and working around
2 dangerous machinery preclude him from performing the DOT jobs of hand packager and packaging machine
3 operator because the job information in the DOT indicates that those jobs demand the performance of "tasks
4 requir[ing] fast-paced and moving assembly line type work because these tasks need to get completed as
5 quickly as possible." [JS 4-5, 7-8]. Plaintiff also contends that his RFC precludes performance of the DOT
6 job of warehouse worker because that job would require plaintiff to perform public work and work around
7 dangerous machinery. [JS 5-7].

8  Those contentions lack merit. The ALJ instructed the VE to let him know if any of the VE's
9 testimony conflicted with the DOT. [AR 68]. The VE agreed to do so and did not indicate that any such
10 conflict existed. [AR 68-73]. Furthermore, the DOT occupational classifications for the jobs of packaging
11 machine operator, hand packager, and warehouse worker do not conflict in any material way with the VE's
12 testimony.

**Packaging machine operator**

14 The DOT states that a packaging machine operator "[t]end[s] machine that performs *one or more*
15 packaging functions, such as filling, marking, labeling, banding, tying, packing, or wrapping containers,"
16 and "may" perform such tasks as starting and stopping the machine; observing its operation to detect and
17 report malfunctions; making minor adjustments or repairs; inspecting filled containers to make sure that
18 product is packaged according to specifications; feeding product to, and unloading product from, conveyors,
19 hoppers, or other feeding devices; replenishing packaging supplies; mounting supplies on spindles or
20 placing them in a hopper or other feeding device; positioning and holding containers in a machine and
21 operating pedals, buttons, or levers to clean, glue, label, sew, or staple containers; cutting stencils and
22 stenciling information on containers; and tallying or recording information regarding products packaged.
23 The DOT also states that the job of packaging machine operator does not involve exposure to "moving
24 mech[anical] parts."[2] See DOT 920.685-078.

---

[2] DOT occupational classifications include a description of the degree of exposure to the following potentially hazardous "environmental conditions": weather, extreme cold, extreme heat, wetness and/or humidity, noise level, vibration, atmospheric conditions, moving mechanical parts, electric shock, high exposed places, radiation, explosives, and "other."

4

1    The ALJ specifically queried the VE as to whether or not the job of packing machine operator
2  involved working with dangerous machinery, citing lumber mill machinery, "plastic injection machine with
3  the heat and all that," and "mold injecting machine" as examples of the kind of dangerous machinery he
4  envisioned. [AR 72]. The VE said that the job of packing machine operator involved "machines that help
5  package small products" and were not dangerous. The VE testified that the hypothetical person could
6  perform approximately 10,000 such jobs regionally and 165,000 nationally. [AR 72]. Plaintiff's counsel
7  did not challenge that testimony on cross-examination. [AR 72-73].

8    The ALJ also asked the VE to assume that the hypothetical person could not perform "fast paced
9  work such as a moving assembly line, and what I mean by that [is a] conveyor belt," but could, for example,
10 do a job "in packing where you have people next to you" and "where you kind of work on your own thing
11 at one time," provided that "continual interaction" with others and "teamwork" is not required. [AR 70].
12 In response to that question, the VE testified that the hypothetical person could perform the job of packaging
13 machine operator. [AR 70-72]. The DOT does not specify that packaging machine operator jobs require
14 fast-paced or high-production work, so it is not apparent that the VE's testimony conflicts with the DOT
15 on that point. Even if the VE's testimony on that point could be said to create a material conflict with the
16 DOT due to the hypothetical person's inability to perform fast-paced work, the VE's testimony regarding
17 a specific subcategory of packaging machine operator jobs is substantial evidence supporting the ALJ's
18 finding at step five. Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 915 (9th Cir. 1998) (per
19 curiam) (holding that the ALJ "properly relied on expert testimony 'matching the specific requirements of
20 a designated occupation with the specific abilities and limitations of the claimant' in deviating from the
21 Dictionary of Occupational Titles descriptions") (quoting Johnson, 60 F.3d 1428, 1435 (9th Cir. 1995)).

**Hand packager**

23    The DOT job of hand packager requires "[p]ackag[ing] materials and products manually, performing
24 *any combination of*" two dozen or more discrete tasks, including, among other things, cleaning, lining,
25 padding, and assembling containers; obtaining, sorting, and wrapping products; filling and weighing
26 containers; sealing, labeling, and sorting filled containers; inspecting materials, products, and containers
27 at each step of packaging process; and recording information. DOT 920.587-018 (italics added). Hand-
28 packager jobs "[m]ay be designated according to whether high production or small-lot packaging" is

involved. Among other tasks, the job of hand packager may—but does not necessarily—entail "start[ing], stop[ping], and regulat[ing] speed of conveyor." However, exposure to "moving mechanical parts" is "not present." DOT 920.587-018.

The VE testified that the hypothetical person could perform hand packager jobs numbering approximately 12,000 regionally and 164,000 nationally. Since the DOT indicates that hand-packager jobs do not involve exposure to dangerous machinery and do not necessarily require the type of fast-paced, high-production, conveyor-belt work precluded by plaintiff's RFC, the VE's testimony in response to the ALJ's hypothetical question does not create a material conflict with the DOT and is substantial evidence supporting the ALJ's step-five finding. Cf. Overman v. Astrue, 546 F.3d 456, 463 (7th Cir. 2008) (per curiam) (noting the clear conflict between a VE's testimony that the claimant could perform work as a hand packager and the ALJ's finding that he must avoid any exposure to extreme heat, a condition that the DOT states exists "frequently" in hand packager jobs).

**Warehouse worker**

According to the DOT, a warehouse worker "[p]erforms *any combination of*" a number of tasks "to receive, store, and distribute material, tools, equipment, and products within establishments," including, among others, conveying materials and items from receiving or production areas to storage or to other designated areas by hand, handtruck, or electric handtruck; sorting and placing materials or items on racks, on shelves, or in bins; filling requisitions, work orders, or requests for materials, tools, or other stock items and distributing items to production workers or assembly line; assembling customer orders from stock and placing orders on pallets or shelves, or conveying orders to packing station or shipping department; opening bales, crates, and other containers, using handtools; recording amounts of materials or items received or distributed; and weighing or counting items for distribution within plant. A warehouse worker also "[m]ay" perform additional tasks, such as using a computer to enter records, driving a vehicle to transport stored items from a warehouse to a plant or picking up items from several locations for shipment, completing requisition forms, and preparing parcels for mailing. DOT 922.687-058. Exposure to moving mechanical

parts is "not present." Furthermore, the DOT job of warehouse worker, like the DOT jobs of packaging machine operator and hand packager, involves a level of interaction with people that is "not significant."[3]

Nothing in the DOT suggests that the job of warehouse worker is incompatible with an RFC for nonpublic work with no intense interpersonal contact with others, no fast-paced work, no moving assembly lines, and no work around dangerous machinery. Therefore, no material conflict exists between that information and the VE's testimony, which constitutes substantial evidence supporting the ALJ's finding at step five.

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of reversible legal error. Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

May 7, 2014

_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[3] DOT occupational classifications include alphanumeric codes signifying the degree to which the job "requires a worker to function . . . in relation to Data, People, and Things." See DOT, Appendix B, Explanation of Data, People, and Things (4th ed. rev.1991).

7